Hill v. Textron                         CV-00-221-M   08/24/01
                  UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


James Hill, Jr.,
      Plaintiff

      v.                                Civil No. 00-221-M
                                        Opinion No. 2001 DNH 158
Textron Automotive
Interiors, Inc.,
      Defendant


                          **O R D E R**


      James Hill, Jr. brings this action against his former

employer, Textron Automotive Interiors, seeking damages for

alleged acts of harassment and discrimination based upon the

color of his skin.  See 42 U.S.C. § 1981 and Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  He claims

that while an employee of defendant, he was subjected to

harassment, denied promotions, and wrongfully terminated because

he is a person of color.  Textron denies any wrongdoing and moves

for summary judgment.

## Standard of Review

When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. While a reviewing court must take into account all appropriately documented facts, it may ignore those allegations "which have

2

since been conclusively contradicted by [the non-moving party's] concessions or otherwise," <u>Chongris v. Board of Appeals</u>, 811 F.2d 36, 37 (1st Cir. 1987), as well as bald assertions, unsupported conclusions, and mere speculation.  <u>See</u> <u>Serapion v. Martinez</u>, 119 F.3d 982, 987 (1st Cir. 1997).

**Background**

Viewed in the light most favorable to Hill, the material facts of record appear as follows.  Hill was employed by Textron as a machine operator from November of 1989 through October of 1996, when he was laid off as part of a reduction in force. Textron recalled Hill the following Spring, but he declined its offer of reinstatement.

Hill is of English and Portugese descent and, while he apparently categorizes himself as Caucasian and a member of a "white race," Hill deposition at 25-27, he says his "skin is darker than a Caucasian's."  Complaint at para. 10.  Accordingly, he claims to be a "person of color."  During the course of his employment, Hill says he was subjected to (or witnessed) the following acts of discrimination:

3

1. Early in his employment, Hill overheard Textron employees refer to a Costa Rican co-worker as "Julio" and "Spic Boy."

2. At times during his employment various co-workers and supervisors called Hill "Chico" (a reference to Freddie Prinze's character in "Chico and the Man") and "Hadji" (a reference to a cartoon character in "Johnny Quest").

3. Hill and other employees were sometimes referred to as "you guys" and "brother."

4. One of Hill's supervisors sometimes called him "Rick," referring to another Textron employee of color, "when she wanted to make him feel stupid for asking a question." Complaint at para. 13.

5. Hill perceived that his supervisors were overly critical of his work, conduct he attributes to their bias against him due to the color of his skin.

6. Hill applied for various vacant positions within Textron during his tenure but was consistently denied promotions.

7. When Textron announced its plans to carry out a reduction in force, layoffs were supposed to take place in reverse order of seniority. Nevertheless, Hill says his employment was terminated prior to that of an employee who had less seniority than he.

See Complaint, paras. 9-20.

4

On March 24, 1997, approximately five months after his employment was terminated, Hill filed a charge with the New Hampshire Human Rights Commission ("HRC"), alleging that he had been subjected to unlawful discrimination during the course of his employment. Because Hill specifically requested that his charge also be presented to the EEOC, it is deemed to have been filed with the EEOC sixty days later (i.e., May 23, 1997). See 29 C.F.R. § 1601.13(b). In December of 1998, the HRC issued a finding of "no probable cause."

In January of 1999, counsel for Hill asked the Equal Employment Opportunity Commission ("EEOC") to reconsider the matter and, upon completion of its review, to issue a "right-to-sue" letter. Approximately three months later, on March 23, 1999, the EEOC mailed a "Dismissal and Notice of Rights" letter to both Hill and Textron. Hill's copy was addressed to the post office box he had provided as his mailing address. In that notice, the EEOC told Hill that it had adopted the findings of the HRC, informed him of his right to sue Textron, and specifically notified him that "your lawsuit must be filed within 90 days of your receipt of this Notice; otherwise your right to

sue based on this charge will be lost." Exhibit A-3 to defendant's memorandum. The copy sent to Textron arrived in due course. Hill, however, claims he never received his copy, despite the fact that letter addressed to him was not returned to the EEOC as undelivered or undeliverable.

In January of 2000, more than a year after she asked the EEOC to reconsider the matter and issue a right-to-sue letter, counsel for Hill contacted the EEOC and inquired into the status of Hill's case. On February 4, 2000, the EEOC faxed her a copy of the right-to-sue letter it mailed nearly a year earlier, dated March 23, 1999. Hill and his counsel say that was the first time they learned that the EEOC had issued a right-to-sue letter. And, because he commenced this litigation within 90 days of his counsel's having received a copy of the right-to-sue letter, Hill asserts that his complaint should be deemed timely.

Textron points out that Hill filed this suit more than one year after the EEOC mailed the original right-to-sue letter and, for that reason, says Hill's Title VII claim is barred by the 90 day filing requirement. It also asserts that the circumstances

of this case do not warrant application of equitable tolling principles. As for the merits of Hill's Title VII claim, Textron says it had legitimate, non-discriminatory reasons for failing to promote Hill and ultimately terminating his employment; his allegations of harassment describe incidents that do not meet the "severe or pervasive" requirement; and Hill failed to avail himself of Textron's internal discrimination grievance procedures. With regard to Hill's § 1981 claim, Textron says most of his claims are time barred and, in any event, he cannot establish a prima facie case of discrimination. Finally, it says its failure to promote him as well, as its decision to terminate his employment, were not racially motivated.

**Discussion**

I. Hill's Title VII Claim was not Timely Filed.

In order to be timely, a federal suit under Title VII must be filed within 90 days after the EEOC provides the claimant with a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1) (the EEOC "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge.") (emphasis

supplied). However, most courts have concluded that the 90-day period does not begin to run until the aggrieved person actually _receives_ notice in the form of a right-to-sue letter. The EEOC, in turn, has adopted the general rule that the 90 day period begins to run upon the claimant's receipt of the right-to-sue letter. _See_ EEOC Compliance Manual, para. 255, § 4.5(a)(2) (2000), Exhibit D to defendant's motion to dismiss (document no. 4) ("the date the [right-to-sue letter] is received begins the Title VII/ADA/ADEA 90 day limitation.").

In considering the effect of a plaintiff's failure to file suit within the 90 days specified in section 2000e-5(f)(1), the Court of Appeals for the First Circuit has concluded that "section 2000e-5(f)(1) is nonjurisdictional." _Rice v. New England College_, 676 F.2d 9, 10 (1st Cir. 1982). Thus, the 90-day filing requirement is more akin to a statute of limitations than a jurisdictional prerequisite to suit, and is subject to waiver and equitable tolling. _See generally_ _Zipes v. Trans World Airlines, Inc._, 455 U.S. 385 (1982). Nevertheless, it remains plaintiff's burden to demonstrate either: (1) compliance with the 90-day filing requirement; or (2) a basis for equitable tolling. _See,_

e.g., Stambaugh v. Kansas Dept. of Corrections, 844 F. Supp. 1431, 1433-34 (D.Kan. 1994).

In the absence of evidence to the contrary, courts will presume that a plaintiff received his or her right-to-sue letter three days after the EEOC mailed it. See Fed. R. Civ. P. 6(e); Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148 n.1 (1984). See also Holmes v. NBC/GE, 914 F. Supp. 1040, 1043 (S.D.N.Y. 1996) (collecting cases). That presumption is, however, rebuttable. See, e.g., Sherlock v. Montefiore Medical Center, 84 F.3d 522, 526 (2d Cir. 1996) ("If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive.").

As noted above, the original right-to-sue letter was mailed to Hill on March 23, 1999, to the address (post office box) he provided to the EEOC. See Exhibit C to defendant's motion to dismiss, Affidavit of Robert Sanders, EEOC Keeper of the Records,

9

at para. 3.  That notice was not returned to the EEOC as undelivered or undeliverable.  Id., at para. 4.  A copy of the right-to-sue letter sent simultaneously to Textron arrived in due course, on March 25, 1999.  See Exhibit B to defendant's motion to dismiss.

Notwithstanding the evidence that the right-to-sue letter was mailed in March of 1999, Hill denies that he received it and claims the first notice he received of his right to sue was when a copy of that letter was faxed to his attorney in February of 2000.  In support of that claim, Hill originally submitted what is, at best, a deft affidavit.  In it, he testified, "At the residence where I lived on or about March, 1999, mail was often not delivered to my residence."  Exhibit 2 to plaintiff's objection to motion to dismiss (document no. 5) (emphasis supplied).  Of course, since Hill collected his mail at a post office box (the address he gave to the EEOC), the claim that mail was often not delivered to his residence says nothing about mail sent to his post office box, and does nothing to dispel the presumption that the right-to-sue letter was delivered in a timely manner to his post office box.  And, statements of that

10

sort might reasonably be viewed as part of a calculated effort to mislead.[1]  In a more recent affidavit, submitted in opposition to defendant's motion for summary judgment, Hill more pertinently and unequivocally denies having received the original right-to-sue letter in March of 1999.

Nevertheless, Hill's denial of receipt is, standing alone, insufficient to rebut the presumption that he received the right-to-sue letter on or before the end of March, 1999.  See, e.g., Sherlock, 84 F.3d at 526 (concluding that the plaintiff's sworn statement that she could not recall the specific date on which she received a right-to-sue letter and her claim that her husband believed it was received more than three days after the date on which it was mailed were insufficient to rebut the presumption of timely delivery).  Here, Hill adds, by way of corroboration, that in addition to the right-to-sue letter, he failed to receive two other pieces of mail he had been expecting - a phone bill and a credit card bill.  Other than his unsupported claims, however, he

---

[1]    In his deposition, Hill admitted that he never received mail at his home, in a freestanding mailbox at the end of his driveway, or in a collection of mailboxes on a rural free delivery route.  His mail was always delivered to the post office, and placed in his post office box.  Hill deposition at 8, 38-39.

11

has failed to provide any evidence that those pieces of mail were not received in a timely fashion (e.g., affidavit from a representative of the utility and/or credit card company describing Hill's asserted efforts to obtain second copy of his monthly statements, copies of those duplicate statements and/or cover letters that might have accompanied them, an affidavit of the local postmaster attesting to Hill's claims regarding delivery problems at that particular post office, etc.).

Alternatively, Hill suggests that the right-to-sue letter may have actually arrived at his post office box, but was retrieved (and not delivered) by his wife. The record contains no statement, sworn or otherwise, from his wife that might support that supposition. And, while the court of appeals for this circuit has yet to confront this precise issue, several courts have concluded that Title VII's 90-day filing period begins to run upon a spouse's receipt of the claimant's right-to-sue letter. See, e.g., Harvey v. City of New Bern Police Dept., 813 F.2d 652 (4th Cir. 1987); Bell v. Eagle Motor Lines, 693 F.2d 1086 (11th Cir. 1982). Again, conclusory supposition cannot serve to rebut the presumption of timely delivery.

12

Hill has failed to rebut the presumption that the properly addressed right-to-sue letter deposited by the EEOC in the United States mail system did not arrive in a timely fashion. His Title VII claims are, therefore, untimely.

Principles of equitable tolling (a point plaintiff discusses only in passing) are not warranted under the circumstances of this case. See generally Irwin v. Veterans Admin., 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). If, as Hill claims, he was aware that he had not received at least two pieces of mail he expected, he (or his counsel) should have made timely inquiry into the status of his administrative complaint. Notwithstanding the fact that Hill claims to have contacted his creditor(s) and

13

requested copies of the allegedly missing bills, he waited more than a year after requesting EEOC reconsideration of his administrative complaint before checking on its status. Such a prolonged delay precludes Hill from availing himself of the equitable remedy of tolling (if his wife indeed intercepted his mail and failed to deliver it to him). That is particularly true since the EEOC is required to notify a claimant of the status of his or her complaint within 180 days of filing. See 42 U.S.C. 2000e-5(f)(1). See also Kremer v. Chemical Construction Corp., 456 U.S. 461, 465 n.3 (1982) ("[W]here the EEOC determines that there is no reasonable cause to believe that a charge is true, it must dismiss the charge and issue the complainant a statutory right-to-sue letter. Where the Commission has not filed a civil action against the employer, it must, if requested, issue a right-to-sue letter 180 days after the charge was filed."); Pietras v. Board of Fire Commissioners, 180 F.3d 468, 473 (2d Cir. 1999) ("If no civil suit is filed by the EEOC or its authorized agent within 180 days of the filing of the charge, then the EEOC must notify the plaintiff by letter.").

After having allegedly failed to receive a right-to-sue letter within 180 days, Hill was obligated to undertake at least some modest effort to check on the status of his complaint, particularly in light of what he claims were known problems concerning delivery of his mail. He failed to do so until more than a year had passed. As the Court of Appeals for the Eleventh Circuit observed, "There is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless. Plaintiff should be required to assume some minimum responsibility himself for an orderly and expeditious resolution of his dispute." Lewis v. Conners Steel Co., 673 F.2d 1240, 1242 (11th Cir. 1982).

Under the circumstances of this case, Hill's conclusory, unsupported denial of receipt, standing alone, is insufficient to rebut the presumption of receipt or create a trial-worthy issue of material fact concerning when (or whether) he actually received notification of his right to sue. That is particularly so given evidence that Textron received its copy of the EEOC's letter in due course, and that Hill's letter was properly addressed, routinely mailed, and never returned as undelivered or

15

undeliverable. To conclude otherwise would subject the 90-day filing requirement imposed by Congress to easy manipulation – by simply claiming not to have received written notification of the right to sue, the timeliness requirement could be easily nullified by dilatory plaintiffs.

II. Hill's Title VII and § 1981 Claims Fail on the Merits.

Alternatively, even if Hill's Title VII claims were deemed timely (or if he were presumed to have created a sufficient factual dispute to warrant a jury's resolution of the timeliness issue), Textron has demonstrated that it is entitled to judgment as a matter of law as to both his Title VII and Section 1981 claims. See Textron's amended memorandum (document no. 26) and its amended reply (document no. 34).

With regard to Hill's claim that he witnessed racial discrimination directed toward a co-worker early during his employment - an effort, it would seem, to support his claims of a hostile work environment - Textron has introduced evidence that those incidents were isolated and occurred early in Hill's tenure with the company, the involved co-worker complained about the

16

conduct, Textron promptly resolved it to that employee's satisfaction, and the complained-of behavior stopped. Hill himself concedes as much. See Hill deposition at 101.

As to the alleged acts of discrimination directed at him (co-worker references to "Hadji," "you guys," "brother," and "Rick"), the court will assume that such references were related to the color of Hill's skin and created a severe or pervasive hostile work environment, notwithstanding the fact that neither assumption is well supported by Hill's submissions. For example, references to Hill as "Hadji" (a cartoon character) began when one of his friends started using that nickname to refer to him. Hill did not protest, did not ask the employee (or others) to stop and, instead, simply returned serve by calling that employee "Sherman" (a reference, says Hill, to another cartoon character). According to Textron, none of the employees Hill identifies as having called him "Hadji" held supervisory roles at Textron. See Defendant's second amended reply (document no. 34) at 1 n.1. See also Hill deposition at 102-03. As to the alleged use of the nickname "Chico," Hill admits he did not find it "offensive," "damaging," or "cruel" since he thought he resembled Freddie

17

Prinze (the late comedian). Hill deposition at 121. <u>See also</u> Hill affidavit at para. 8. As to the references to Hill as "brother," Hill testified in his deposition that the term "brother" was used by fellow employees to refer to him as well as white co-workers. Hill deposition at 120. Thus, there is no evidence that it was used in a derogatory, discriminatory, or offensive manner. Finally, while the references to Hill as "Rick" were clearly intended to be demeaning, Hill has provided little evidence (other than the claim that Rick is a "person of color") to suggest that those references evidence a race-based or color-based animus.[2]

---

[2] It is, perhaps, worth noting that both Textron and Hill always considered him to be "Caucasian," apparently based on his European heritage. Consequently, it is unclear exactly what Hill means when he says he is "a person of color," other than he considers his skin tone to be slightly darker than that of a "white Caucasian." Because Hill's § 1981 claim is premised upon alleged discrimination based upon his skin tone, it raises interesting questions concerning § 1981's scope, including issues related to possible distinctions between discrimination claims based on race and those based on color and whether § 1981 even contemplates the latter. <u>See generally</u> Trina Jones, <u>Shades of Brown: The Law of Skin Color</u>, 49 Duke L.J. 1487 (2000) (suggesting that "even if one concludes that Congress used the word 'white' only to reference a racial category, this fact alone should not prevent the inclusion of color claims under § 1981, given that color now plays a role analogous to the one that race played for the drafters. . . . Because colorism involves many of the same stereotypes and assumptions that result in discrimination on the basis of race, it provides the same sort of invidious treatment that Congress sought to eliminate in 1866

Even giving Hill the benefit of those generous assumptions, he has failed to present evidence that he ever availed himself of Textron's internal grievance procedures. Despite having received anti-discrimination training from Textron, and despite being aware of Textron's "open door policy" regarding employee reporting of discrimination in the workplace, Hill never asked Textron to take any steps to address what he now claims was a hostile discriminatory work environment, and discriminatory acts aimed at him. See Affidavit of Sandra Conley (submitted with Textron's motion for summary judgment) at para. 29. Having "unreasonably failed to avail [himself] of the employer's preventative or remedial apparatus, [he] should not recover damages that could have been avoided if [he] had done so." Faragher v. City of Boca Raton, 524 U.S. 775, 806-07 (1998). See also Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998).[3]

_____

when § 1981 was enacted. The mere fact that the trigger for discrimination is skin color and not race should not bar coverage of these claims under § 1981.").

[3] Hill's vague references to a letter he sent to Ms. Conley are insufficient to demonstrate that he notified Textron of alleged acts of discrimination. Although he relies on that letter to demonstrate that he notified Textron of his concerns, Hill neglected to provide the court with a copy. Nevertheless, in his deposition, Hill conceded that the letter made no

As to Hill's assertion that he was denied promotion opportunities based upon the color of his skin, even assuming he has made out a prima facie claim under Title VII and/or section 1981 (again, a questionable proposition), Textron has responded by submitting evidence documenting a legitimate non-discriminatory basis for each of the hiring/promotion decisions challenged by Hill. See Textron's memorandum (document no. 26) at 9-12; 24-27. Nothing in Hill's submissions supports a claim that Textron's actions were simply a pretext for race-based or color-based discrimination. See generally Straughn v. Delta Air Lines, Inc., 250 F.3d 23 (1st Cir. 2001); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15 (1st Cir. 1999). He has, therefore, failed to carry his burden under the McDonnell Douglas burden-shifting analysis. See generally Conward v. Cambridge School Committee, 171 F.3d 12 (1st Cir. 1999).

And, finally, as to his claim that he was, for discriminatory reasons, laid off before another employee with less seniority, Hill has failed to show that Textron's conduct

reference to, nor would it reasonably notify the reader of, any concerns he might have had regarding race-based or color-based discrimination. See Hill deposition at 85.

20

was, in any way, discriminatory. Textron, on the other hand, has demonstrated that prior to his termination, Hill was offered (or, at a minimum, was aware of), but refused, an opportunity to work on the so-called transition team. See Affidavit of Sandra Conley at para. 8-9 ("At that time, Mark Johnson, an employee with less seniority than Hill, was retained as a member of the plant transition team. . . . Mr. Hill did not apply for the transition team. If Mr. Hill applied for the transition team, he would likely have been placed on the team ahead of Mr. Johnson, by virtue of his seniority."). See also Plaintiff's objection (document no. 27) at 5 (conceding that Hill did not seek the vacant position on the transition team). Thus, unlike Hill, the employee he claims was improperly retained after his own termination actually volunteered for the transition team. And, after his work in that short-term capacity was complete, that other worker, like Hill, was terminated. See generally Affidavit of Sandra Conley. Thus, the record reveals that Hill and the co-worker with less seniority were both laid off as part of the same reduction in force, and the only reason the other employee remained at Textron longer than Hill was because he volunteered for a short term appointment to a different job - a job Hill knew

21

was available but elected not to seek.  Again, Hill has failed to proffer any evidence that suggests Textron's treatment of him with regard to its reduction in force was, in any way, discriminatory, or that its non-discriminatory explanation for its conduct is merely a pretext for discrimination.

## Conclusion

Hill's Title VII claim was not filed in a timely manner and, therefore, must be dismissed.  But, even if it were timely filed, Textron has demonstrated that it is entitled to judgment as a matter of law on both counts in Hill's complaint.  Accordingly, for the reasons set forth above and in Textron's amended memorandum and its amended reply, defendant's motion for summary judgment (document no. 23) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 24, 2001

cc:  Leslie H. Johnson, Esq.
     Debra Dyleski-Najjar, Esq.