Murphy v. SSA                          CV-07-145-PB   02/25/08

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Raymond T. Murphy

    v.                                    Case No. 07-cv-145-PB
                                          Opinion No. 2008 DNH 045

John E. Potter, Postmaster General,
United States Postal Service


MEMORANDUM AND ORDER


Raymond Murphy filed an administrative complaint of discrimination against his employer, the United States Postal Service ("Postal Service") in 1993.  The Postal Service agreed to a settlement resolving his complaint, but then allegedly failed to perform its end of the bargain.  In this lawsuit, Murphy seeks specific performance of the original settlement agreement and also claims that the Postal Service retaliated against him.  The Postal Service has moved for summary judgment.  For the reasons described herein, I grant the Postal Service's motion for summary judgment.

## I.  BACKGROUND

### A.  1993 EEO Complaint and Settlement

During a 1992 restructuring of the Postal Service, Murphy wanted to be promoted to a new District Manager position in Westchester, New York, but someone else was selected for that position instead.  On February 22, 1993, Murphy responded by filing an Equal Employment Opportunity ("EEO") complaint alleging that the Postal Service's decision not to promote him constituted discrimination against him on the basis of his race, color, religion, sex, and age.  On December 28, 1994, Paul Tartaglia (the Postal Service's manager of human resources) and Murphy executed a settlement agreement resolving Murphy's EEO complaint. Under the agreement, Murphy was to receive: a promotion to a District Manager position in Central New Jersey (items 1 – 4), specified relocation benefits (item 5), a salary increase retroactive to October 1993 (item 6), a lump sum payment of $16,000 "to reflect past relocation benefits inequities" (item 7), and payment of $10,000 to Murphy's representatives in the negotiation process (item 8).

From 1995 to 1998, Murphy made repeated, unsuccessful efforts to obtain final approval of the settlement from the

Postal Service.  On March 7, 1995, in an internal Postal Service memo to one of his superiors, Mr. Tartaglia represented that he and Murphy had recently discussed the "reluctance of Headquarters to approve my agreement with him in settlement of his EEO Case." (Murphy, for his part, asserts that no such discussion took place.)

On April 12, 1995, Mr. Tartaglia sent a memo to Murphy containing two proposed amendments to the original agreement, both of which related to the retroactive salary increase in item 6.  Murphy responded by proposing his own revisions to Mr. Tartaglia on June 12, 1995.  On November 20, 1995, having received no reply to the proposed revisions, Murphy sent, through counsel, a letter to Mr. Tartaglia inquiring about the status of the matter.  On July 24, 1996, Murphy sent, through counsel, another set of proposed revisions to Mr. Tartaglia.

On August 17, 1997, Murphy sent a brief memo directly to Mr. Tartaglia that "attempted to update and summarize the subject agreement for potential closure."  He stated that although items 1 through 4 (relating to his transfer to a new District Manager position in New Jersey) had been implemented and some were "moot," item 6 was "[n]ever implemented," item 7 was "never

effected," and item 8 was "still an outstanding issue."

On September 7, 1998, Murphy communicated to his attorney that no progress had been made regarding the unfulfilled terms of the agreement, and that "unless reasonable action is effected, in say 90 days, we should re-file and also file a reprisal."[1]  There is, however, no evidence in the record suggesting that Murphy or his attorney did anything to follow up on this sentiment.

From 1998 to 2000, there do not appear to have been any communications exchanged between the parties regarding Murphy's case other than Murphy's receipt of two payments: $16,000 in May of 2000 in satisfaction of term 7 of the agreement, and a $12,000 payment to Murphy's attorney on an unspecified date in satisfaction of term 8 of the agreement.

For the next four years, from May 2000 to December 2004, there is no indication in the record that either Murphy or the Postal Service communicated further regarding the settlement agreement.

---

[1] As he explained in the letter, Murphy's phrase "to file a reprisal" meant that he intended to file a complaint alleging that "Nancy George's action denying me the 1995, 5% merit/bonus" constituted retaliation against him for alleging discrimination.

**B.     2004 EEO Complaint Seeking to Enforce 1994 Settlement**

In 2004, Murphy was assigned to serve as a postal advisor to the Coalition Provisional Authority in Iraq.  On December 15 of that year, apparently after his return from Iraq, Murphy announced his retirement from the Postal Service.  Simultaneously, Murphy filed a complaint with the EEO Compliance and Appeals Manager alleging that the Postal Service had breached the December 1994 settlement agreement.

Meanwhile, in January 2005, Murphy attempted to revive the negotiations over amending the settlement agreement (by then over a decade old) via e-mail.  In reply, the Postal Service stated its willingness to "implement the agreement you signed on December 25, 1994."  The Postal Service also asserted that it had "already complied with several points in this agreement."

On July 18, 2005, the Postal Service denied Murphy's 2004 EEO claim on the ground of untimeliness, stating that Murphy "knew or should have known of the agency's alleged noncompliance but instead waited until your imminent retirement to allege breach of settlement."

Murphy appealed that decision to the Equal Employment Opportunity Commission (EEOC).  On August 21, 2006, the EEOC

denied his appeal.  The EEOC found that Murphy's allegation of breach was untimely and that his claim was barred by laches because of his failure to act with due diligence in pursuing his claim.

## C. 2005 EEO Complaint with Retaliation and Other Claims

On July 23, 2005 (four days after the Postal Service's denial of his 2004 EEO complaint), Murphy filed a second EEO complaint alleging religious discrimination, age discrimination, and retaliation for his 1993 EEO claim.

On September 2, 2005, the Postal Service denied Murphy's second EEO complaint because his claims were both untimely and barred by laches.

Murphy appealed that decision to the EEOC.  On January 23, 2007, the EEOC denied his appeal because his claims were untimely, barred by laches, or reflected nothing more than dissatisfaction with the processing of a previously-filed complaint.

On March 22, 2007, the EEOC denied reconsideration of its decision.

## D. The Instant Suit

On May 15, 2007, Murphy filed a pro se complaint in this

court, seeking specific performance of the 1994 settlement agreement, or unspecified equitable remedies "that would produce a similar result." Additionally, Murphy seeks relief for various retaliation claims spanning the twelve-year period from the filing of his original EEO complaint in 1993 to his retirement announcement in 2005.

## II.  <u>STANDARD OF REVIEW</u>

The Postal Service has filed a Motion to Dismiss And/Or For Summary Judgment, which I treat as a motion for summary judgment. Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment must first identify the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported her motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.

DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997); see Celotex, 477 U.S. at 323. "At this stage, the nonmoving party 'may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue' of material fact as to each issue upon which he would bear the ultimate burden of proof at trial." DeNovellis, 124 F.3d at 306 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The test is whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. (quoting Anderson, 477 U.S. at 249-50).

## III. ANALYSIS

Murphy seeks specific performance of the 1994 settlement agreement and, separately, seeks relief for actions that the Postal Service allegedly took in retaliation for his discrimination claims. I discuss these two claims in turn.

### A. Specific Performance of 1994 Settlement Agreement

Murphy's claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. I assume without deciding that Murphy may file an action in federal district court to enforce a breached Title VII/ADEA settlement agreement, rather than relying exclusively on administrative remedies. See Owens v. West, 182 F. Supp. 2d 180, 188 (D. Mass. 2001) ("Title VII's emphasis on voluntary compliance would be compromised if federal courts were found to lack jurisdiction to enforce agreements of this sort"). Even so, Murphy's failure to meet relevant administrative deadlines bars his action for specific performance. Murphy missed two deadlines, either one of which can independently justify dismissal: (1) his 2004 EEO complaint missed, by several years, the thirty-day deadline for complaining of a breached settlement agreement; and (2) his 2007 complaint in this court missed, by several months, the ninety-day deadline for appealing the August 21, 2006, denial of his 2004 EEO complaint.

## 1. Failure to Timely File 2004 EEO Complaint

If, after reaching a settlement agreement of his Title VII or ADEA claims, a federal employee believes that the employing agency has breached that agreement, he must follow the procedure set out in 29 C.F.R. § 1614.504:

> If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased.

29 C.F.R. § 1614.504(a).

Murphy failed to comply with this requirement, missing the deadline not by days or months, but by years. As early as 1995, Murphy clearly knew that the Postal Service was reluctant to comply with the agreed-upon terms of the settlement, as evidenced by his decision to retain counsel and the conduct of counsel (including a November 20, 1995, letter to Paul Tartaglia expressing doubt about whether "the original settlement is still in effect"). Additionally, Murphy's August 17, 1997, letter to his attorney specifically noted that the retroactive salary increase was "never implemented," the $16,000 lump sum payment was "never effected," and the payment to his attorney was "still an outstanding issue." In other words, he was aware that the Postal Service had only partially performed its end of the bargain. Indeed, by September 7, 1998, Murphy was frustrated enough that he suggested that if no progress was made in the next

-10-

ninety days, he intended to "re-file and also file a reprisal." This shows that Murphy was not only aware of the Postal Service's noncompliance, but felt that it was serious enough to justify a further EEO complaint. It could be argued that the statute of limitations began running at this point. Even assuming that it did not, however, Murphy's inaction from 2000 to 2004 extinguished whatever rights remained.

By May of 2000, the Postal Service had given Murphy the $16,000 lump sum payment and paid $12,000 to Murphy's attorney. All that remained to be implemented was the retroactive salary increase. Yet the Postal Service did not perform this final term, and Murphy neither insisted that they perform nor did he file any EEO complaints of noncompliance.

It was not until four years of silence and continued non-performance had elapsed that Murphy chose, on December 15, 2004, to alert the EEO officer to the Postal Service's noncompliance. Thus, even giving Murphy the benefit of all reasonable inferences in his favor, the thirty-day deadline set by 29 C.F.R. § 1614.504(a) had long since elapsed by the time Murphy filed his 2004 EEO complaint.

There is no basis in equity to excuse that delay. The Postal Service properly raised laches as a defense to Murphy's 2004 EEO complaint, both internally and before the EEOC. Additionally, Murphy has offered no evidence suggesting that it would be appropriate to equitably toll the running of the deadline. Accordingly, Murphy's unexplained failure to seek specific performance of his settlement agreement for more than four years extinguished his right to seek specific performance of the alleged settlement agreement.

## 2. Lawsuit Not Filed Within Ninety Days of Final Administrative Action

Even if Murphy's multi-year delay in filing his 2004 EEO complaint was excusable, his present effort to compel specific performance would still fail because Murphy missed the deadline for challenging the EEOC's final rejection of his 2004 EEO complaint. Under 42 U.S.C. § 2000-e16(c), an aggrieved federal employee may file a civil action "[w]ithin 90 days of receipt of notice of final action taken by . . . the Equal Employment Opportunity Commission." This ninety-day statute of limitations applies equally to Title VII claims and ADEA claims, if -- as here -- the ADEA claims were first raised in an administrative proceeding. See Rossiter v. Potter, 357 F.3d 26, 30 (1st Cir.

-12-

2004); Lavery v. Marsh, 918 F.2d 1022, 1028 (1st Cir. 1990). In Murphy's case, the ninety-day statute of limitations began running when he received the EEOC's August 21, 2006, rejection of his 2004 EEO complaint. Accordingly, he had until November 19, 2006, plus the time necessary for service by mail of the EEOC decision, to file the instant lawsuit in federal district court. See Hill v. Textron Auto Interiors, Inc., 160 F. Supp. 2d 179, 183 (D.N.H. 2001) ("In the absence of evidence to the contrary, courts will presume that a plaintiff received his or her right-to-sue letter three days after the EEOC mailed it"). Instead, however, Murphy waited until May 15, 2007, to do so. That filing was about six months too late.

The fact that Murphy included some of the same claims in his subsequent 2005 EEO complaint, which did not reach a final resolution until March 2007, did not toll the running of this statute of limitations. Brown v. Unified Sch. Dist. 501, 465 F.3d 1184, 1186 (10th Cir. 2006) ("If the claimant fails to file suit within the ninety-day window, the lapsed claims are not revived by including them in a second EEOC charge and restarting the process"); Spears v. Mo. Dep't of Corr. & Human Res., 210 F.3d 850, 853 (8th Cir. 2000); Soso Liang Lo v. Pan American

-13-

World Airways, Inc., 787 F.2d 827, 828 (2d Cir. 1986) ("We hold that whether the present action is time barred must be determined with reference to only the first Notice of Right to Sue. Otherwise, the time limitations . . . would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased.").

Murphy argues that the "ongoing" nature of the prior settlement negotiations tolled the statute of limitations. This argument is meritless. First, occasional disputes over the performance of a settlement whose terms were agreed upon some twelve years earlier cannot fairly be characterized as ongoing settlement negotiations.[2] Second, even if I accepted, arguendo, Murphy's contention that the settlement negotiations were in some sense ongoing, that does not give rise to the kind of grave injustice that would justify equitable tolling. See Chico-Velez v. Roche Prods., Inc., 139 F.3d 56, 59 (1st Cir. 1998) ("[E]quitable tolling is reserved for exceptional cases and the record before us simply lacks the ingredients necessary to

_____

[2] Indeed, the record contains no suggestion that the Postal Service was even discussing the topic with Murphy between August 21, 2006, and May 15, 2007.

warrant invocation of the doctrine").

Accordingly, Murphy failed to meet the ninety-day deadline for challenging the EEOC's August 21, 2006, decision in federal district court, and the complaint must be dismissed.

## B. Murphy's Allegations of Retaliation

In his 2005 EEO complaint, Murphy alleged that he suffered retaliation for his prior religious discrimination and age discrimination claims from August 1994 to August 2004.[3] I analyze these allegations first as allegations of retaliation for claiming religious discrimination (Title VII) and next as allegations of retaliation for claiming age discrimination (ADEA).

---

[3] In his administrative proceedings and in his complaint in this court, Murphy alleges that he was retaliated against in that he: (1) did not receive settlement funds, including the $16,000 he received in May 2000, in a timely manner; (2) did not receive a merit award in 1994; (3) received a Northeast Area Economic Value Added ("EVA") award instead of a New York Metro Area EVA award in 1995; (4) did not receive a proper pay increase when promoted to the position of Manager, Operation Support, in 1997; (5) experienced a breach of privacy by an EEO counselor in 1995; and (6) received a reduced incentive payment for his postal position in Iraq in August 2004. Additionally, Murphy's complaint adds a new allegation that, on an unspecified date, the Deputy Postmaster General engaged in retaliation by reviewing Murphy's travel expenses.

1.  **Title VII Retaliation Claims**

To the extent that Murphy asserts Title VII retaliation claims, his claims are barred by his failure to seek timely EEO counseling.

EEOC regulations require an aggrieved person to "initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). According to the record before me, Murphy did not seek EEO counseling until December 15, 2004, which was not within forty-five days of any of the retaliatory acts he alleged in his 2005 EEO complaint. As for Murphy's new and undated allegation that the Deputy Postmaster General engaged in retaliation by reviewing Murphy's travel expenses, there is no evidence that he ever sought EEO counseling regarding this issue.

Thus, as to both his new and old allegations of retaliation, Murphy has failed to show that he sought EEO counseling within the requisite forty-five days. Additionally, there is no basis for equitable tolling of the forty-five-day deadline. Murphy blames at least some of his tardiness on "Tartaglia postal

related" delays, but this allegation is so vague and undeveloped that it cannot justify any tolling. See, e.g., Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 279 (1st Cir. 1999) (denying equitable tolling where the employee "has advanced no developed argumentation in support of her claim" and "her complaint does not allege any facts that remotely suggest a plausible basis for such relief").

Accordingly, to the extent that Murphy asserts he was retaliated against in violation of Title VII, his failure to meet the relevant deadlines forces the dismissal of those claims.

## 2. ADEA Retaliation Claims

Murphy's ADEA retaliation claims are defective because (1) there is no retaliation cause of action under the ADEA, and (2) even if a retaliation cause of action did exist, it would be time-barred. Under First Circuit case law, the ADEA does not provide a cause of action for retaliation by federal employers. Gomez-Perez v. Potter, 476 F.3d 54, 60 (1st Cir. 2007) ("Congress did not intend for 29 U.S.C. § 633a to include a cause of action for retaliation as the result of having filed an age-discrimination related complaint"), cert. granted, 128 S. Ct. 29 (U.S. Sept. 25, 2007). Even if such a cause of action did exist,

-17-

however, it would be barred by Murphy's failure to timely seek EEO counseling or to file notice of his intent to sue within 180 days of the alleged acts of retaliation.

As to EEO counseling, Murphy's ADEA retaliation claims are governed by the same deadlines as his Title VII retaliation claims. Lavery, 918 F.2d at 1027. His ADEA retaliation claims are thus time-barred for the same reasons as his Title VII retaliation claims, discussed earlier.

A federal employee claiming age discrimination has the additional option, not available to Title VII claimants, of bypassing the administrative process and filing suit directly in federal court. Jorge v. Rumsfeld, 404 F.3d 556, 561 (1st Cir. 2005). By statute, however, a federal employee who wishes to avail himself of this bypass option must notify the EEOC of his intent to sue within 180 days following the occurrence of the allegedly unlawful practice. Id. at 561; see 29 U.S.C. § 633a(d). In this case, Murphy never filed a notice of intent to sue. Thus, he did not fulfill the requirements for exercising the bypass option.

Accordingly, to the extent that Murphy asserts he was retaliated against for alleging age discrimination, the statute

offers no remedy; alternatively, his failure to meet the relevant deadlines forces the dismissal of those claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 8) is granted.  The clerk is directed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

February 25, 2008

cc:  Raymond T. Murphy, pro se
     Seth R. Aframe, Esq.