NASSAU COUNTY EMPLOYEE
"L", Plaintiff,

v.

COUNTY OF NASSAU, Thomas R. Suozzi, Individually and as County Executive, Peter Sylver, Individually and as Deputy County Executive, Peter J. Schmitt, Individually and as a Legislator of the County of Nassau, Nassau County Legislature, and John P. Donnelly, Individually and as Director of Human Resources, Defendants.

No. 04–CV–1014 (SJF)(MLO).

United States District Court,
E.D. New York.

Nov. 29, 2004.

Judah Serfaty, Robert M. Calica, Rosenberg Calica & Birney LLP, Garden City, NY, for Plaintiff.

Esther D. Miller, David B. Goldin, Nassau County Attorneys Office, Mineola, NY, Thomas J. Foley, Foley, Griffin, Jacobson & Faria, LLP, Garden City, NY, Paul F. Millus, Snitow, Kanfer, Holtzer & Millus, LLP, New York, NY, for Defendants.

## OPINION & ORDER

FEUERSTEIN, District Judge.

## INTRODUCTION

Plaintiff commenced this action alleging violations of her civil rights pursuant to 42 U.S.C. § 1983. Defendants County of Nassau ("Nassau County"), Thomas R. Suozzi ("Suozzi"), the Nassau County Legislature (the "Legislature"), and John P. Donnelly ("Donnelly") have moved to dismiss the second and third counts of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") and, if granted, to dismiss the remaining state law claims for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Defendant Peter Sylver ("Sylver") has moved to dismiss the third count of the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Peter J. Schmitt ("Schmitt") has moved to dismiss the second and third counts of the complaint pursuant to Fed. R.Civ.P. 12(b)(6).

## THE COMPLAINT [1]

In July 2003, plaintiff commenced employment as Administrative Assistant to Sylver, Nassau County's Deputy Executive for Economic Development. (Compl.para.13, 17). Shortly thereafter, Sylver made "regular, repeated, [and] inappropriate physical and sexual advances toward plaintiff," including preventing her from leaving his office and attempting to hug, kiss, and fondle her. (*Id.* para. 20). According to plaintiff, Sylver persistently harassed her, threatened to terminate her employment, and coerced her into performing a sexual act. (*Id.* para. 21). On or about November 4, 2003, Sylver at-

---

1. As is required on motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint are accepted to be true for purposes of these motions, and all reasonable inference are drawn therefrom in favor of plaintiff. The allegations do not, however, constitute findings of fact by the Court.

tempted to force plaintiff to engage in sexual intercourse with him and, when she refused, terminated her employment as his Administrative Assistant. (*Id.* para. 22).

As a result of her complaints to Nassau County employees and representatives, plaintiff was directed to consult with Donnelly, the Nassau County Director of Human Resources. (*Id.* para. 23). Donnelly encouraged the execution of an "Agreement and General Release," in which plaintiff agreed to release Nassau County, its agencies and employees, from all claims arising out of her employment in exchange for Nassau County re-hiring plaintiff as an administrative assistant in another department at an increased salary. (*Id.* para. 24, 26, 28). The agreement was executed on or about November 18, 2003 and according to its terms, both parties agreed not to disclose the agreement's conditions or any information upon which it was based. (*Id.* para. 25–26).

In January 2004, Schmitt, the Minority Leader of the Nassau County Legislature, learned of the Agreement and allegations of misconduct committed by Sylver. (*Id.* para. 29). Donnelly requested that plaintiff provide a complete statement of the alleged incidents to Schmitt's legislative staff, and plaintiff complied upon Donnelly's assurances that such disclosures would remain confidential pursuant to the Agreement. (*Id.*). On January 26, 2004, Schmitt called plaintiff as a witness at a Nassau County legislative hearing in an attempt to elicit testimony regarding the alleged sexual misconduct and thereafter revealed plaintiff's identity and accusations to the news media. (*Id.* para. 30–31).

STANDARD OF REVIEW

A motion to dismiss should be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling her to relief. *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir.2003); *Weixel v. Bd. of Educ. of New York*, 287 F.3d 138, 145 (2d Cir.2002). In deciding a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir.2003); *New v. Ashcroft*, 293 F.Supp.2d 256, 257 (E.D.N.Y.2003). The Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt*, 340 F.3d at 101 (internal quotation and citation omitted). The issue is not whether the plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support the claims. *New*, 293 F.Supp.2d at 257 (citing *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

ANALYSIS

I. Count Two

A. The Legislature and Nassau County

Count Two of the complaint alleges, *inter alia*, that the conduct of Nassau County and Suozzi "in hiring and failing to supervise ... Sylver ... amounted to deliberate indifference" to plaintiff's constitutional rights. (Compl.para.42). Nassau County seeks dismissal of Count Two on the ground that plaintiff failed to allege that her injuries were directly caused by action attributable to the municipality. Count Two does not specifically allege any wrongdoing on the part of the Legislature as a body, apparently relying upon paragraph 40, which alleges repudiation of the confidential agreement and the actions of Schmitt in disclosing plaintiff's identity as the bases for liability against the Legislature. The Legislature contends that since it is an arm of Nassau County, it is not a separate entity subject to suit.

■ A claim against a municipal employee in his or her official capacity may be treated as an action against the municipality itself. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Orange v. County of Suffolk,* 830 F.Supp. 701, 706–07 (E.D.N.Y.1993). However, to hold Nassau County, the Legislature, and the individual defendants liable in their official capacities, plaintiff must allege that the constitutional violations were caused by an official municipal policy or custom. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### 1. The Legislature

■ In support of its position, the Legislature cites, among other cases, *Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463 (E.D.N.Y.2002), which held that "departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Id.* at 477; *see also Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y. 2002); *Polite v. Town of Clarkstown,* 60 F.Supp.2d 214, 216 (S.D.N.Y.1999); *Umhey v. County of Orange,* 957 F.Supp. 525, 531–32 (S.D.N.Y.1997); *Wilson v. City of New York,* 800 F.Supp. 1098, 1101 (E.D.N.Y.1992). However, a legislative body is not an administrative body, and thus these cases are distinguishable. Nevertheless, the complaint does not specifically allege wrongdoing by the Legislature. Rather, the complaint alleges wrongdoing by only one member of the Legislature, Schmitt, and fails to ascribe any aspect of his allegedly illegal conduct to the Legislature as a whole, its policies or customs, or even to allege condonation by its members. Therefore, the complaint is dismissed as against the Legislature.

### 2. Nassau County

#### (a). Improper Hiring

■ The complaint alleges that Suozzi appointed Sylver "without causing a background check to be conducted, without causing staff members to undertake routine inquiries into Sylver's background and past, or to otherwise exercise due and appropriate diligence...." (Compl.para.44). In *Board of the County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), the Supreme Court explained the standard for imposing municipal liability under § 1983 on an improper hiring theory:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Id.* at 1392. Additionally, culpability depends not on the probability that the inadequately-screened officer would inflict *any* constitutional injury, but rather whether the officer was "highly likely to inflict the particular injury suffered by the plaintiff." *Id.*

■ Plaintiff's complaint fails to allege the required nexus between Sylver's background and his alleged sexual misconduct. *See id.* ("The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong."). The complaint alleges

that Sylver was convicted of an unspecified felony, filed for bankruptcy, has multiple outstanding judgments, and "committed other acts of misconduct...." (Compl.para.42). According to the complaint, all of this information was "readily ascertainable from public sources ... and by utilizing appropriate and due diligence." (*Id.* para. 43). However, nothing alleged in the complaint would have made it "plainly obvious" from a screening of Sylver's background that he would engage in sexual misconduct. Since there is no allegation that Sylver's record revealed an incident or history of sexual misconduct, plaintiff's allegations do not state a claim against Nassau County and Suozzi in his official capacity for liability premised upon their hiring decision.

#### (b). Failure to Supervise

A failure to supervise constitutes a municipal policy or custom only where it amounts to "deliberate indifference" to the rights of those with whom municipal employees will come into contact. *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Deliberate indifference is established where: (1) "a policymaker knows 'to a moral certainty' that [his] employees will confront a given situation;" (2) "the situation either presents the employee with a difficult choice of the sort that ... supervision makes less difficult or that there is a history of employees mishandling the situation;" and (3) "the wrong choice ... will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York,* 974 F.2d 293, 297 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

Plaintiff has failed to allege that the situation was foreseeable and preventable by training or supervision which was not in place. Nor is there an allegation that the defendants condoned such behavior by Sylver or others. *See Babi–Ali v. City of New York,* 979 F.Supp. 268, 273 (S.D.N.Y.1997). Thus, Count Two is dismissed insofar as it claims liability premised upon the negligent hiring and supervision against Nassau County and Suozzi. The remainder of the allegations in Count Two which plaintiff seeks to attribute to Nassau County and the Legislature are also not alleged to be the policies or customs of the municipal defendants and the entire claim is therefore dismissed as to these defendants.

#### B. Individual Capacity

#### 1. Suozzi's Individual Liability

The personal involvement of a supervisory official in the alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). A supervisor may be personally involved in a § 1983 violation where he or she: (1) participated directly in the alleged constitutional deprivation; (2) failed to remedy the wrong after being informed of the violation; (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring. *Colon,* 58 F.3d at 873; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir. 1986).

Plaintiff apparently relies only upon (4) in the *Colon* test since the complaint alleges that Suozzi's failure to supervise Sylver amounted to deliberate indifference to her constitutional rights in light

of Sylver's unspecified felony conviction, bankruptcy filing, multiple outstanding judgments, and "other acts of misconduct...." (Compl.para.42). However, even accepting all of plaintiff's allegations as true, she has failed to allege a causal connection between the alleged failures and her injury. As noted above, a review of Sylver's background would not render his sexual misconduct foreseeable, therefore plaintiff has failed to allege gross negligence by Suozzi in supervising Sylver. Thus, Count Two as to Suozzi in his individual capacity is dismissed.

### 2. Schmitt's Individual Liability

#### (a). Legislative Immunity

Schmitt contends that he is absolutely immune from liability in his individual capacity insofar as plaintiff's claims relate to his statements or conduct at the January 26, 2004 legislative hearing.

 Legislators are absolutely immune from civil liability for their legislative activities. *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir.2003). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott–Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* Nor is the identity of the actor performing the act dispositive. *Harhay*, 323 F.3d at 210 (citing *Forrester v. White*, 484 U.S.

219, 224, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

 In terms of his actions at the hearing, Schmitt argues that he "sought to question plaintiff with regard to her allegations of sexual assault and her subsequent promotion as part of an investigation into various instances of malfeasance by Deputy County Executive Peter Sylver and a potential cover-up on the part of the Nassau County administration." ˙ (Schmitt's Reply Mem. of Law in Supp. of Mot. to Dismiss at 4). "The board of supervisors [2] is empowered to conduct an investigation into ... the conduct and performance of official duties of any officer or employee paid from county funds...." N.Y. County Law § 209 (McKinney 2004). Since Schmitt was engaged in "legitimate legislative activity," the motion is granted as to the allegations of violations at the legislative hearing. However, plaintiff also alleges that Schmitt violated her rights after the hearing by issuing statements to the media. It is unclear whether this conduct was "legitimate legislative activity." Therefore, the motion to dismiss is denied insofar as it seeks dismissal of the allegations against Schmitt based upon legislative immunity for his conduct after the legislative hearing concluded.

#### (b). Qualified Immunity

 Schmitt further argues that he is protected from suit in his individual capacity by the doctrine of qualified immunity. *See Ford v. Reynolds*, 316 F.3d 351, 356 (2d Cir.2003) ("[Q]ualified immunity protects ... individual defendants sued in their individual capacity...."). "The

---

**2.** The Nassau County Board of Supervisors was replaced with the Nassau County Legislature in 1994. *Goosby v. Town Bd. of Hempstead*, 956 F.Supp. 326, 331 (E.D.N.Y.1997); *Eclipse Enters. v. Gulotta*, 942 F.Supp. 801, 803 (E.D.N.Y.1996); *see also* N.Y. County

Law § 150–a (McKinney 2004) ("All the functions, powers, obligations and duties which by law are possessed by or vested in the board of supervisors of a county may be exercised by an elected county legislative body....").

qualified immunity doctrine shields 'government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65 (2d Cir.1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). First, it must be determined whether plaintiff has alleged a violation of a constitutional right. *Id.* Second, courts must consider whether the violated right was clearly established at the time of the conduct. *Id.* at 66. Lastly, if the plaintiff had a clearly established, constitutionally protected right that was violated, he or she must show that the defendant's action was not objectively reasonable. *Id.*

Although Count Two is dismissed against Schmitt in his individual capacity based upon his conduct at the hearing, he would, in any event, be entitled to a dismissal because his conduct at the hearing was protected by the doctrine of qualified immunity. Moreover, the doctrine protects Schmitt in his individual capacity for dissemination of the details of the hearing to the media.

### (i). Constitutional Violation

Although the Constitution does not expressly mention a federal right to privacy, the Supreme Court has ruled that a right to privacy is implicit in the concept of ordered liberty protected by the Fourteen Amendment. *Carey v. Population Servs. Int'l,* 431 U.S. 678, 684, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) ("[O]ne aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of privacy, or a guarantee of certain areas or zones of privacy.'") (quoting *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 35

L.Ed.2d 147 (1973)). In *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Supreme Court outlined two types of privacy interests: (1) "the individual interest in avoiding disclosure of personal matters" and (2) "the interest in independence in making certain kinds of important decisions." *Id.* at 599–600, 97 S.Ct. 869. The first interest has been characterized as a "right to confidentiality" to distinguish it from the second, commonly referred to as the "right to autonomy." *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994). Since plaintiff claims that personal information was improperly disclosed, and not that her ability to make important personal decisions was inhibited, the Court must determine whether plaintiff's privacy interest in confidentiality is implicated.

"The Fourteenth Amendment 'protects an individual's right to control the nature and extent of information released about that individual.'" *Spetalieri v. Kavanaugh,* 36 F.Supp.2d 92, 108 (N.D.N.Y.1998) (quoting *Bloch v. Ribar,* 156 F.3d 673, 683 (6th Cir.1998)). However, "a constitutional right to nondisclosure of certain types of private information exists, but not all disclosures of private information will trigger constitutional protection." *Bloch,* 156 F.3d at 684. In certain cases, the Second Circuit has recognized a constitutional right to privacy in personal information. In *Barry v. City of New York,* 712 F.2d 1554 (2d Cir.1983), the Second Circuit acknowledged the existence of a constitutionally protected interest in the confidentiality of certain personal financial information. *Id.* at 1558–59. In *Doe v. City of New York,* 15 F.3d 264 (2d Cir.1994), the Second Circuit extended the right to confidentiality to include personal medical information. *Id.* at 267. Specifically, the Court held that plaintiff had a right to privacy regarding his HIV status

since his personal medical condition "is a matter that he is normally entitled to keep private." *Id.* at 269; *see also Barry*, 712 F.2d at 1562 ("We do not think ... the release of information that is not 'highly personal' rises to the level of a constitutional violation.").

■ As in the context of personal financial and medical disclosures, the right to confidentiality encompasses protection against the public dissemination of details of a sexual assault. Victims of sexual violence frequently encounter misdirected criticism and scrutiny that compounds their injuries. "[A] historic stigma has attached to victims of sexual violence. In particular, a tradition of 'blaming the victim' of sexual violence sets these victims apart from those of other violent crimes." *Bloch*, 156 F.3d at 686. Therefore, there is a confidential interest and right to privacy regarding the details of a sexual assault.

Yet this confidentiality interest is not absolute, and can be overcome by a substantial government interest that outweighs the right to privacy. *See Doe*, 15 F.3d at 269–70 ("The city's interest in disseminating information ... must be 'substantial' and must be balanced against [plaintiff's] right to confidentiality."); *Barry*, 712 F.2d at 1559–60 (applying intermediate scrutiny and holding that the financial disclosure requirement furthers a substantial state interest). Thus, a plaintiff's privacy interest may be outweighed by the government's interest in releasing details of a sexual assault for law enforcement purposes, such as a criminal prosecution. *See Bloch*, 156 F.3d at 686.

Assuming the allegations of the complaint are true, it is difficult to understand how a news conference, subsequent to the investigative inquiry, outweighed plaintiff's right to have the details of the sexual assault withheld from the media. Based upon the foregoing, I find that plaintiff has sufficiently alleged a privacy right in which her interest was not outweighed by an overriding governmental interest.

### (ii). Clearly Established Constitutional Violation

■ However, even if plaintiff's right of privacy was not outweighed by an overriding governmental interest, Schmitt is immune from liability if his actions did not violate " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727). A constitutional right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741, 122 S.Ct. 2508.

"In determining whether a particular legal principle was 'clearly established' for purposes of qualified immunity," the Second Circuit has considered three factors: "whether the right was defined with reasonable specificity; whether the decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful." *Powell v. Schriver*, 175 F.3d 107, 113 (2d Cir.1999); *see also Hanrahan v. Doling*,

331 F.3d 93, 98 (2d Cir.2003) ("[T]he court looks to both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances then confronting the defendant, would have understood that his actions were unlawful.") (internal citation and quotation omitted).

 Plaintiff contends that New York Civil Rights Law § 50–b and New York Criminal Procedure Law § 60.42 (known as the Rape Shield Law), which protects the identity of a sexual assault victims and renders evidence of victim's sexual conduct inadmissible at a criminal trial, respectively, *see* N.Y. Civ. Rights Law § 50–b (McKinney 2004); N.Y.Crim. Proc. Law § 60.42, demonstrate that there is a clearly established constitutional right to privacy. However, the constitutional right to privacy is not equated with the statutory rights accorded by New York and other states. *Rosenberg v. Martin,* 478 F.2d 520, 524 (2d Cir.1973); *Baird v. Perez,* No. 98–3762, 1999 WL 386746, at *3 (S.D.N.Y. June 10, 1999). When determining whether a right is clearly established, only appellate precedent existing at the time of the constitutional violation is relevant. *Moore v. Vega,* 371 F.3d 110, 114 (2d Cir.2004). Although I find that plaintiff had a constitutional right to privacy regarding the details of a sexual encounter, plaintiff has failed to cite decisions of the Supreme Court or Second Circuit which specifically establish plaintiff's privacy right under the circumstances. Thus, plaintiff has failed to show that her constitutional right to privacy was clearly established. The absence of judicial precedent requires dismissal of the remainder of the claim against Schmitt individually as he could not be expected to know that his actions were unlawful. Based upon the foregoing, examination of the third element, objective reasonableness, is unneces-

sary and the second cause of action is dismissed against Schmitt in his individual capacity.

## III. Count Three

Count Three alleges that defendants conspired to deprive plaintiff of her constitutional rights. (Compl.para.48–53). Defendants counter that plaintiff has failed to sufficiently plead the existence of a conspiracy to violate § 1983 and that the claim is barred by the intracorporate conspiracy doctrine.

### A. Pleading Requirements

In *Ciambriello v. County of Nassau,* 292 F.3d 307 (2d Cir.2002), the Court of Appeals reiterated that " 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed....' " *Id.* at 325 (quoting *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)).

 However, not long before *Ciambriello* was decided, the Supreme Court held that where the Federal Rules of Civil Procedure do not specify heightened pleading requirements, Rule 8(a)(2)'s simplified notice pleading standard applies. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *see also* Fed.R.Civ.P. 8(a)(2). *Swierkiewicz* did not discuss the standard for examining claims that merely set forth conclusory allegations unaccompanied by any factual support. "It is questionable whether, after *Swierkiewicz,* it is necessary to set out all the elements of a claim of conspiracy to violate § 1983, as opposed to identifying the claim of conspiracy together with a sufficient indication of the parties, the general purpose of the conspiracy, and the approximate date so that the defendants have notice of what they are

charged with." *Bullard v. City of New York*, 240 F.Supp.2d 292, 301 (S.D.N.Y. 2003). In *Toussie v. Powell*, 323 F.3d 178 (2d Cir.2003), the Second Circuit noted it "did not have occasion" to consider whether its previous statements on the pleading requirements for § 1983 conspiracy claims remained valid in light of *Swierkiewicz*. *Id.* at 185 n. 3. However, even under the minimal standard of Federal Rule of Civil Procedure 8(a)(2), plaintiff's complaint does not state a claim of conspiracy.

The complaint alleges in conclusory fashion that Suozzi, Donnelly, Sylver, and Nassau County conspired to deprive plaintiff of her constitutional rights. (Compl.para.49). According to the complaint, the object of the conspiracy was to "disseminate[ ] ... the ... details of the sexual assaults committed upon and ... sexual harassment committed against ... plaintiff...." (*Id.* para. 4). However, the complaint does not allege any facts supporting Suozzi, Donnelly, or Sylver's participation in the publication of the sexual misconduct. Suozzi is alleged to have improperly hired and supervised Sylver. (*Id.* para. 44). Donnelly is alleged to have encouraged plaintiff to execute the agreement with Nassau County and to have instructed plaintiff to provide a statement of the events surrounding the agreement to Schmitt's staff. (*Id.* para. 24, 29). Sylver is alleged to have engaged in sexual harassment and misconduct. (*Id.* para. 20–22). Since none of these acts are related to the alleged conspiracy even under the lesser standard enunciated in *Swierkiewicz*, Count Three is dismissed as to Suozzi, Donnelly, and Sylver.

Count Three further alleges that "Shmitt [sic], the Nassau County Legislature and the County" conspired to deprive plaintiff of her constitutional rights. (*Id.* para. 50). However, "[a] municipality cannot 'conspire' except through the actions of individual policymaking officials." *Brown–Alleyne v. White*, No. 96–2507, 1999 WL 1186809, *5, 1999 U.S. Dist. LEXIS 18511, at *13 (E.D.N.Y. Oct. 11, 1999). Since the complaint names no individual policymaking official that conspired with Schmitt, and since two actors are needed for a conspiracy, Count Three as to Schmitt is also dismissed.

**B. Intracorporate Conspiracy Doctrine**

 In any event, the conspiracy claims against Suozzi, Donnelly, and Schmitt are barred by the intracorporate conspiracy doctrine. "Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Quinn v. Nassau County Police Dep't*, 53 F.Supp.2d 347, 359 (E.D.N.Y. 1999); *see also Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); *Girard v. 94th and 5th Avenue Corp.*, 530 F.2d 66, 71 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976). "This is particularly so where the officers and employees are alleged to be acting within the scope of their employment." *Rini v. Zwirn*, 886 F.Supp. 270, 291 (E.D.N.Y.1995). The doctrine, which had its genesis in cases involving corporations, has been extended to allegations of conspiratorial conduct between a public entity and its employees. *Everson v. New York City Transit Authority*, 216 F.Supp.2d 71, 76 (E.D.N.Y.2002); *Silverman v. City of New York*, No. 98–6277, 2001 WL 1776157, at *4 (E.D.N.Y. Nov.19, 2001); *Rini*, 886 F.Supp. at 292. Here, all of the individual defendants are employees of Nassau County. However, "[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Bond v. Bd. of*

*Educ. of the City of New York,* No. 97–1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar.17, 1999).

 Therefore, the doctrine's applicability depends upon whether the individual defendants were acting within the scope of their official duties or pursuing their independent personal interests. The complaint alleges that Suozzi failed to "exercise due and appropriate diligence in order to ascertain whether Sylver was a person of suitable moral character and fitness to hold high appointive office. . . ." (Compl.para.44). Since hiring and supervising Sylver was within the scope of Suozzi's employment as County Executive, and since the complaint contains no allegation that Suozzi employed Sylver to pursue interests that were independent of Nassau County, the doctrine bars plaintiff's conspiracy claim against Suozzi.

Donnelly, the Director of Human Resources, is alleged to have encouraged plaintiff to execute the agreement with Nassau County and, at Schmitt's direction, to have instructed plaintiff to provide a statement of the events surrounding the agreement to Schmitt's staff. (*Id.* para. 24, 29). The complaint does not allege that Donnelly's actions were separate and apart from his official duties or otherwise improperly motivated. Accordingly, the doctrine also bars plaintiff's conspiracy claim against Donnelly.

The complaint further states that Schmitt disclosed the confidential details of the alleged sexual misconduct to the Legislature and the news media "in an effort to embarrass the Democrat[ic] faction of the County government." (*Id.* para. 30). As noted above, the Nassau County Legislature is empowered to conduct an investigation into the conduct of any Nassau County employee. N.Y. County Law § 209 (McKinney 2004). Despite an alleged improper motive, since conducting an investigation into the misconduct of a Nassau County deputy executive was within the scope of Schmitt's official duties, the doctrine bars plaintiff's conspiracy claim. *See Rini,* 886 F.Supp. at 292 ("Regardless of the motive or intent supporting the legislation" to develop and approve a budget reduction plan which eliminated plaintiffs' positions, "these are acts within the scope of [the municipal defendants'] official duties.").

CONCLUSION

Count Two is dismissed as to all defendants except Sylver in his individual capacity. Count Three is dismissed as to all defendants. The parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on December __, 2004 at _____ for a settlement and/or scheduling conference with authority or persons with authority to resolve this action. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

IT IS SO ORDERED.