Ronald A. NIMKOFF, Plaintiff,

v.

Eric J. DOLLHAUSEN, Domenick P. Orefice, Officer Gallagher, Robert L. Nash, Sergeant Molinelli, Unknown Police Officers Identified as John Doe Numbers 1–10, and County of Nassau, Defendants.

No. 08–cv–2856 (ADS)(WDW).

United States District Court, E.D. New York.

Nov. 19, 2010.

Nimkoff Rosenfeld & Schechter, LLP by Ronald A. Nimkoff, Esq., Jenni B. Spiritis, Esq., of Counsel, New York, NY, for plaintiff.

Nassau County Attorney John Ciampoli by Assistant Nassau County Attorney Matthew Brian Weinick, Assistant Nassau County Attorney Ralph J. Reissman, Assistant Nassau County Attorney Ryan Singer, Assistant Nassau County Attorney Esther D. Miller, of Counsel, Nassau County Attorney's Office, Mineola, NY, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of an incident on July 18, 2007 in which the plaintiff Ronald A. Nimkoff was arrested for obstructing governmental administration by the defendant Nassau County Police Officers Eric

Dollhausen and Domenick Orefice. As a result of his arrest and his subsequent detention, Nimkoff asserts federal and state causes of action for false arrest, violation of his constitutional rights, assault, and battery. All the defendants now move for summary judgment on all of the plaintiff's causes of action. For the reasons set forth below, the Court grants in part and denies in part the defendants' motion.

## I. BACKGROUND

The following facts are drawn from the parties' submissions in this case. As is required on a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party, the plaintiff.

On the morning of Wednesday, July 18, 2007, the plaintiff Ronald Nimkoff drove to 12 Laura Lane, Plainview, New York, to assist his then-girlfriend, Robin Koschecka, in cleaning her flooded basement. Robin's eighteen year-old daughter, Brooke Koschecka, was home that day. When Nimkoff arrived, Brooke was in a room upstairs and was not helping to clean the basement. Robin and Brooke had apparently not been getting along well prior to July 18, 2007, and Brooke's alleged refusal to help clean the flooded basement was a breaking point. Seeking to enforce some "tough love" with her daughter, Robin telephoned the police shortly after Nimkoff arrived, and asked them to remove Brooke from 12 Laura Lane.

At 12:01 p.m., Nassau County Police Officer Domenick Orefice knocked on the front door of 12 Laura Lane in response to the plaintiff's telephone call. Robin invited Officer Orefice into her living room, and explained that she wanted to evict Brooke from her home. Officer Orefice told her that he could not do that. Nimkoff, who is an attorney admitted to practice in New York State, told Orefice that, under New York law, Orefice both could and should

remove Brooke from the house. Orefice confirmed that he would not do so.

Much of what happened for the rest of Wednesday, July 18, 2007 is vigorously disputed by the parties. However, the parties agree that after his initial meeting with Nimkoff and Robin, Orefice went upstairs to speak with Brooke, and that shortly after Orefice returned to the first floor, a second Nassau County Police Officer, Eric Dollhausen, arrived at 12 Laura Lane. In addition, transcripts from two 911 calls that Nimkoff placed at 12:09 and 12:10 p.m. provide a number of additional undisputed facts. The transcript of the calls records that Nimkoff and Robin asked the officers to leave 12 Laura Lane at about 12:10 p.m., and that at the same time, the officers were attempting to speak with Robin concerning her daughter. The transcript also reflects that Nimkoff told Robin several times not to talk to the officers, and that at one point one of the two officers told Nimkoff, "You grab her [Robin] one more time, sir ... and I will arrest you for obstruction." (Tr. of 911 calls on Jul. 18, 2007 at 7:17–22.) Multiple times during the second of these two calls, Nimkoff asked the 911 operator that someone be sent to protect him from the "rogue" officers in the house, and toward the end of the call, the 911 operator stated that a supervisor was on his way to the house. (Id. at 3:2, 11:3–19.) The call then ended.

Shortly after Nimkoff terminated the call with the 911 operator, but before the supervisor arrived at the house, Officer Dollhausen arrested Nimkoff. The parties' accounts of the arrest differ dramatically, but all agree that at some point soon after the call ended, the officers again sought to speak with Robin, and Nimkoff wagged his finger in front of Robin and told her, "not another word." Dollhausen then arrested Nimkoff.

The story that officers Orefice and Dollhausen tell of the incident is that Nimkoff was aggressive and obnoxious virtually from the moment that they stepped inside 12 Laura Lane. The officers explain that they understood from their dispatcher that they were responding to a domestic disturbance at 12 Laura Lane, and that their typical practice is to interview all of the people involved before leaving the scene of the incident. However, when the officers attempted to talk to Robin, Nimkoff physically prevented her from talking to them, while shouting loudly at the officers and at Robin. Despite repeated warnings, Nimkoff persisted in physically blocking Robin from talking to the officers. Finally, when Nimkoff wagged his finger in Robin's face and grabbed her forcefully to prevent her from answering the officers' questions, Dollhausen arrested Nimkoff for obstructing governmental administration, and placed him in the back of his police car.

On his part, Nimkoff asserts that it was Officers Orefice and Dollhausen who were obnoxious and aggressive from the moment they arrived at the home. Nimkoff states that, along with being Robin's boyfriend, he also was her lawyer. After Orefice and Dollhausen refused to escort Brooke from the home, Nimkoff advised Robin as her lawyer not to speak further with the officers. However, in response to Nimkoff's "lawyering" (pl.'s opp. at 8), as well as in response to Nimkoff's request that the officers leave 12 Laura Lane, the officers showed obvious irritation and became physically menacing. For his part, Nimkoff never physically restrained Robin, and in fact only touched her to comfort her. Nevertheless, frustrated with Nimkoff's advice to Robin as her attorney, Dollhausen and Orefice looked for an opportunity to arrest Nimkoff. When Nimkoff later wagged his finger near Robin, the officers saw their opening, and Dollhausen "charged down the stairs, ripped Nimkoff's hands behind his back, handcuffed and arrested him." (Pl.'s Resp. at 4.) Dollhausen then "manhandled" Nimkoff into his police car. (Def.'s Rule 56.1 Resp., ¶ 128.)

The parties also radically disagree about what happened after Nimkoff's arrest. However, as before, there are a few areas of common ground. First, the parties agree that Orefice and Dollhausen's supervisor, defendant Sergeant James Molinelli, arrived at 12 Laura Lane only after Nimkoff had been arrested. The parties also agree that Nimkoff sat in the back of the police car for some period of time before being transported, at 12:42 p.m., to the Nassau County Second Precinct station house in Woodbury, New York. All also agree that at 12:52, Nimkoff was booked at the station house by the desk officer, the defendant Nassau County Police Officer Robert Nash, and that Officers Dollhausen and Orefice then escorted Nimkoff to the precinct holding cell, where he was placed on a bench and handcuffed to a wall.

The parties further agree that, at some point, Nimkoff was permitted to use a bathroom and to call Robin, and that later, Nimkoff's attorney called the station house and spoke with Nimkoff. Then, at 5:33 p.m., Nash asked Nimkoff about his physical condition, and Nimkoff responded that his wrists and arms hurt, he felt lightheaded, and he was dehydrated. At 5:46 p.m., Dollhausen and Orefice transported Nimkoff to a nearby hospital, where a doctor briefly examined Nimkoff and determined that he was "fit for confinement." (Defs.' and Pl.'s Rule 56.1 Stmt., ¶ 186.) Nimkoff and the two officers returned from the hospital at 7:37 p.m., and then, at 7:50 p.m., Nimkoff was issued a desk appearance ticket for obstructing governmental administration. He was then promptly released. There is no dispute that the charge against Nimkoff was ultimately dismissed, or that Nimkoff never sought med-

ical treatment for the harm he allegedly suffered on July 18, 2007.

According to the defendants, during all of these events, Nimkoff continued to act obstructively. Once arrested, Nimkoff complained almost immediately about the heat in the police car, in spite of the fact that it was a mild day. The officers responded to this by opening a window and running the car's air conditioning. Then, once the officers and Nimkoff arrived at the station house, Nimkoff refused to give even his name to the desk officer. The defendants note that, if not for this refusal, they would have held Nimkoff for only a short period of time. But because they could not process him without his name and other basic information, the officers spent the afternoon responding to Nimkoff's complaints. When Nimkoff finally provided his personal information, he was processed and released.

Again, Nimkoff tells a different story. According to Nimkoff, he sat for twenty to thirty minutes in the stifling heat of the back seat of the police car, with only a single window barely cracked to permit him to breathe. Once at the police station, Nimkoff was handcuffed to the wall with his hand above his head, and although he repeatedly asked for water, he was never given any. Further, despite the fact that Nimkoff explained to the officers that he had an urgent need to urinate, he was forced to wait an hour before he was permitted to use a bathroom.

All the while, the defendant officers taunted Nimkoff. One officer, defendant Police Officer James Gallagher, who was at the station house that afternoon, "uncapped [a] bottle of water, drank it and looking directly at [Nimkoff], said 'ahhhhh, this water is so refreshing!'" (Nimkoff Aff., ¶ 15.) Later, when Nimkoff complained that his handcuffs were too tight, Dollhausen responded by further tightening them, saying, "These handcuffs are much too loose." (Id., ¶ 19.) In addition, Nimkoff was not permitted to call a lawyer for some period of time. Also, Nimkoff claims that he later observed Officer Orefice shred documents in his file. Further, it was only after Nimkoff visited the hospital that he was finally given a drink of water, and even then it was by a doctor, not one of the officers. Finally, after returning from the hospital, Nimkoff was charged and released.

Based on his version of events, Nimkoff commenced the present action on July 17, 2008. Against all of the defendants, the Nimkoff asserts causes of action for (1) false arrest in violation of his federal constitutional rights, pursuant to 42 U.S.C. § 1983; (2) "cruel and unlawful treatment" (compl., ¶ 42) in violation of his Fourth and Fourteenth Amendment rights, pursuant to Section 1983; (3) violation of his Fourth Amendment right to privacy, pursuant to Section 1983; (4) "conspiracy to conceal the fact of [his] arrest and obstruct the administration of justice," (compl., ¶ 55), pursuant to Section 1983; (5) conspiracy to violate his constitutional rights, pursuant to Section 1983; and (6) violation of his Sixth Amendment right to counsel, pursuant to Section 1983. Against Dollhausen, Orefice, and Nassau County, Nimkoff asserts causes of action for; (1) state law false imprisonment; and (2) state law assault and battery. Against defendants Molinelli and Nash, the plaintiff asserts a cause of action pursuant to Section 1983 for "failing to supervise properly." (Compl., ¶ 52.) Finally, against the defendant Nassau County, the plaintiff asserts a derivative Section 1983 claim pursuant to *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), alleging that the county's policies or practices led to the violation of his federal rights.

On May 28, 2010, after the close of discovery, the defendants moved for summary judgment dismissing all of the plaintiff's claims. According to the defendants, there are no triable issues of fact with respect to any of the plaintiff's federal causes of action, and this Court should not exercise pendant jurisdiction over the plaintiff's state law causes of action. The plaintiff opposes the defendants' motion in its entirety.

## II. DISCUSSION

### A. Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. As to the Plaintiff's Section 1983 False Arrest Cause of Action

■ The plaintiff asserts against all of the defendants a federal cause of action for false arrest and false imprisonment, pursuant to 42 U.S.C. § 1983. Having reviewed the relevant evidence, the Court finds that, with respect to the defendants Orefice and Dollhausen, there are triable issues of fact as to this cause of action. The plaintiff and the defendants tell dramatically different stories of what transpired at 12 Laura Lane on July 18, 2007, and the resolution of this discrepancy is a task reserved for the jury. The Court similarly finds that there are triable issues of fact with respect to the defendants' assertion that Orefice and Dollhausen are entitled to qualified immunity with respect to this cause of action. The Court therefore denies the defendants' motion for summary judgment with respect to the plaintiff's Section 1983 false arrest cause of action against Officers Orefice and Dollhausen.

■ However, the Court also finds that there are no triable issues of fact with respect to the plaintiff's false arrest cause of action against defendants Molinelli, Nash, or Gallagher. None of these defen-

dants were present at the plaintiff's arrest, and the plaintiff has not produced any evidence showing that any of the three directed Orefice and Dollhausen to arrest and detain the plaintiff. The fact that officers Molinelli and Nash outranked Orefice and Dollhausen is insufficient to establish a claim against either officer. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). The Court finds that the case on which the plaintiff relies to rebut this conclusion, *Bradley v. City of New York,* No. 04–cv–8411, 2007 WL 232945, *6, 2007 U.S. Dist. LEXIS 7811, *16 (S.D.N.Y. Jan. 25, 2007), is inapposite. In that case, there was evidence that all of the supervisor defendants "were in relatively close proximity to the events leading to [the plaintiff's] arrest" and "were directly involved plaintiff's handcuffing." *Id.* No similar evidence exists here. The Court therefore grants the defendants' motion for summary judgment dismissing the plaintiff's Section 1983 false arrest cause of action against the defendants Molinelli, Nash, and Gallagher.

**C. As to the Plaintiff's Section 1983 Fourth Amendment "Cruel and Unlawful Treatment" Cause of Action**

▮ The plaintiff also asserts against all of the defendants a Section 1983 cause of action for "cruel and unlawful treatment" in violation of his Fourth and Fourteenth Amendment rights. Although the claims by Nimkoff lack clarity, the Court construes the cause of action to essentially allege that the defendants (1) violated the plaintiff's Fourth Amendment rights by using excessive force while arresting him, and (2) violated the plaintiff's Fourteenth Amendment Due Process Clause rights by mistreating him while in custody. *See Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009) ("a person detained prior to con-

viction receives protection against mistreatment at the hands of prison officials under ... the Due Process Clause of the Fourteenth Amendment if held in state custody.")

▮ Pursuant to authority from the United States Supreme Court, a fact finder must analyze a Fourth Amendment excessive force claim by examining "whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'" *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir.2006) (quoting *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)) (internal alterations in original). In so deciding whether an officer used excessive force, the fact finder must consider the totality of the circumstances, including "the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999).

▮▮ As for a Fourteenth Amendment claim for mistreatment of a pre-trial detainee, this cause of action is premised on the constitutional imperative that a person who has not been convicted of a crime may not be punished. *See United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999) (citing *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). To show that treatment during pre-trial detainment was punitive and therefore unconstitutional, a plaintiff must satisfy both an objective and a subjective test. *Id.* at 49–50. The subjective test requires a "sufficiently culpable state of mind, shown by actions characterized by wantonness." *Id.* (quoting *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) and *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999)) (internal quotations and cita-

tions omitted). The objective test requires a showing that "the deprivation alleged is objectively sufficiently serious or harmful enough" and is "not *de minimis.*" *Walsh,* 194 F.3d at 50 (citing *Hudson,* 503 U.S. at 9, 112 S.Ct. 995).

The Court has some concern about the sufficiency of the plaintiff's evidence on these claims with respect to all of the defendants. However, having reviewed the relevant evidence, and resolving doubt in favor of the plaintiff, the Court finds that there are triable issues of fact with respect to the plaintiff's excessive force and mistreatment claims against Dollhausen and Orefice. Considering the totality of Nimkoff's testimony against Dollhausen and Orefice, the Court finds that a jury should resolve whether the officers' actions amounted to excessive force and custodial mistreatment. The Court therefore denies the defendants' motion for summary judgment with regard to the plaintiff's Section 1983 claims against Dollhausen and Orefice for excessive force and mistreatment.

■ However, the Court finds that there are no triable issues of fact regarding the plaintiff's excessive force and mistreatment claims against the other three named individual defendants. None of the three were present at the plaintiff's actual arrest, and to the extent that Molinelli was involved with the plaintiff's detention in a police car, the Court finds that this, alone, does not rise to the level of a constitutional violation. *See, e.g., Esmont v. City of New York,* 371 F.Supp.2d 202, 214 (E.D.N.Y. 2005) (noting that, while three hours in a hot car may be a constitutional violation, "One-half hour in a hot car, however, generally is not," and citing *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir.2001)).

■ Similarly, there is insufficient evidence to show that either Nash or Gallagher was personally involved in the plaintiff's treatment at the station house or the hospital. The only specific allegation

against Gallagher is that, while drinking a bottle of water, he said to the plaintiff "ahhhhh, this water is so refreshing!" This act alone cannot rise to the level of a violation of the plaintiff's Fourteenth Amendment rights, and the plaintiff's conclusory allegations that Gallagher was responsible for the plaintiff's treatment based on Gallagher's mere presence at the station house does not revive the plaintiff's claim.

As for Nash, the Court finds that, even if he were, as desk officer, generally responsible for the treatment of detainees, the plaintiff has produced no evidence to satisfy the requisite subjective element of a Fourteenth Amendment mistreatment cause of action. As noted above, the subjective test for this cause of action requires a "sufficiently culpable state of mind, shown by actions characterized by wantonness." *Walsh,* 194 F.3d at 49–50. The Court finds that there is no evidence that Nash acted in a wanton manner with regard to the plaintiff. *Id.*

Finally, as noted above, the defendants' supervisory positions are insufficient, in themselves, to create liability. *Iqbal,* 129 S.Ct. at 1949. The Court therefore grants the defendants' motion for summary judgment dismissing the plaintiff's Section 1983 claims for excessive force and mistreatment against the defendants Nash, Molinelli, and Gallagher.

## D. As to the Plaintiff's Section 1983 Sixth Amendment Right to Counsel Cause of Action

■ Nimkoff alleges that his Sixth Amendment right to counsel was violated by all of the defendants when he was precluded from speaking with an attorney for a length of time while in the station house jail. The Court finds that there is no evidence to support this cause of action against any of the defendants.

■ The Sixth Amendment right to counsel does not attach until "the time that adversary judicial proceedings have been initiated." *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Because the underlying charges against Nimkoff were state law charges, the Court looks to state law to determine when the adversarial judicial proceedings were initiated. *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 349 (2d Cir.1998). Generally, New York State courts hold that "a criminal proceeding, and with it the right to counsel, is initiated by the filing of an accusatory instrument." *Id.* (citing *People v. Blake,* 35 N.Y.2d 331, 339, 361 N.Y.S.2d 881, 320 N.E.2d 625 (1974)). In addition, the right to counsel attaches "if substantial rights of an accused may be affected by a particular proceeding," *Meadows v. Kuhlmann,* 812 F.2d 72, 76 (2d Cir.1987), which, in New York State includes "when a defendant was brought to the scene of a crime by court order, placed in a post-indictment lineup, or compelled to appear before a grand jury." *Deshawn E.,* 156 F.3d at 349 (internal citations omitted).

Here, the plaintiff was not charged with any crime until he was released from custody, when he was given a desk appearance ticket. While he was in custody, Nimkoff was never "brought to the scene of a crime by court order, placed in a post-indictment lineup, or compelled to appear before a grand jury," *Deshawn E.,* 156 F.3d at 349, nor is there any evidence that any police officer questioned Nimkoff in such a way as to implicate his Sixth Amendment right to have an attorney present during a custodial interrogation. The Court therefore finds that the plaintiff's Sixth Amendment right to counsel did not attach during the time that he was in custody, and as such, his claim for violation of his Sixth Amendment rights is without merit. Accordingly, the Court grants the defendants' motion for summary judgment dismissing the plaintiff's Section 1983

cause of action for violation of his Sixth Amendment rights as against all of the defendants.

### E. As to the Plaintiff's Section 1983 Fourth Amendment Cause of Action for Invasion of Privacy

■ The plaintiff further asserts that the defendants violated his Fourth Amendment right to privacy when, after he asked Officers Orefice and Dollhausen to leave 12 Laura Lane, they refused to do so. Although the plaintiff asserts this claim against all of the defendants, only Orefice and Dollhausen entered 12 Laura Lane, and the Court therefore finds that there is no basis for asserting this cause of action against any of the other individual defendants. The Court thus grants the defendants' motion for summary judgment dismissing this cause of action as to all of the defendants *except* Orefice and Dollhausen.

With respect to this cause of action against Orefice and Dollhausen, the Court notes as a preliminary matter that the defendants do not challenge Nimkoff's standing to assert this claim. In light of this and the Court's review of the record, the Court therefore finds that there are at least triable issues of fact as to whether Nimkoff had a sufficient expectation of privacy at Robin's residence at 12 Laura Lane—where he states he was sleeping several nights a week—so as to provide him standing to assert a Fourth Amendment invasion of privacy cause of action against Orefice and Dollhausen.

■ As for the substance of the plaintiff's privacy claim, the Fourth Amendment "has drawn a firm line at the entrance to the house," and "[a]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Consistent with this, the United States

Supreme Court has noted that, "[f]reedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Id.* (quoting *Dorman v. United States*, 435 F.2d 385, 389 (D.C.Cir.1970)). However, police officers may enter a home without a warrant or exigent circumstances when they are given consent to enter. *See, e.g., Groh v. Ramirez*, 540 U.S. 551, 560, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

■■■ Here, both Robin and Nimkoff gave Officers Orefice and Dollhausen consent to enter 12 Laura Lane, but they withdrew that consent sometime before Nimkoff was arrested. The defendants assert that, once this consent was withdrawn, exigent circumstances—or at least the need to ensure that the domestic dispute was resolved and a report was completed—provided a basis for them to remain in the home. Having reviewed the relevant evidence, the Court finds that there are triable issues of fact as to whether Orefice and Dollhausen were justified in remaining in 12 Laura Lane once consent was withdrawn. At least if Nimkoff's recounting of events is credited, there does not appear to have been an exigency that required the officers to remain in Robin's home after being asked to leave. The Court therefore denies the defendants' motion for summary judgment dismissing the plaintiff's Fourth Amendment invasion of privacy claim against Orefice and Dollhausen.

### F.  As to the Plaintiff's Cause of Action Against Molinelli and Nash for "Failure to Supervise"

Nimkoff asserts that the defendants Molinelli and Nash are liable under Section 1983 for "failing to supervise properly, thereby ratifying and condoning violations of Mr. Nimkoff's constitutional rights." (Compl., ¶ 52.) As the Court noted above, it is the general rule that "each Govern-ment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S.Ct. at 1949. Here, Molinelli and Nash cannot be liable for the acts of their subordinates merely based on their position. Similarly, the Court finds that the plaintiff has adduced no evidence to show that Molinelli or Nash directed Orefice, Dollhausen, or Gallagher in such a way as to be directly implicated in their alleged misdeeds. *Cf. Bradley*, 2007 WL 232945, at *6, 2007 U.S. Dist. LEXIS 7811 at *16. The Court therefore grants the defendants' motion for summary judgment dismissing the plaintiff's "failure to supervise" cause of action against Molinelli and Nash.

### G.  As to the Plaintiff's Section 1983 Causes of Action for Conspiracy

■■■ The plaintiff asserts that the defendants are liable to him pursuant to Section 1983 for "conspiracy to conceal the facts of [his] arrest and obstruct[ing] the administration of justice," (compl., ¶ 55), and "conspiracy with one another to violate Mr. Nimkoff's constitutional rights." (Compl., ¶ 58.) The defendants seek summary judgment on both of these causes of action pursuant to, among other contentions, the intracorporate conspiracy doctrine.

■■■ The intracorporate conspiracy doctrine provides that a plaintiff may not assert a cause of action for conspiracy against employees of a single corporate body acting within the scope of their employment. *See, e.g., Nassau County Employee "L" v. County of Nassau*, 345 F.Supp.2d 293, 304 (E.D.N.Y.2004); *Quinn v. Nassau County Police Dep't*, 53 F.Supp.2d 347, 359 (E.D.N.Y.1999) (Spatt, J.). This doctrine extends to public corporate bodies, including municipalities. *Id.* Here, the defendants assert that all of the named individual defendants were mem-

bers of the Nassau County Police Department, and that they all were acting within the scope of their employment during the events relevant to this case. The plaintiff does not contest this in his opposition papers. In light of the plaintiff's failure to oppose and the Court's review of the record, the Court finds that the plaintiff's causes of action against the defendants for conspiracy are barred by the intracorporate conspiracy doctrine. The Court therefore grants the defendants' motion for summary judgment dismissing the plaintiff's Section 1983 causes of action for conspiracy.

## H. As to the Plaintiff's Section 1983 *Monell* Claim Against Nassau County

██ The plaintiff also asserts a derivative Section 1983 claim against Nassau County for violation of his constitutional rights. The defendants contend that the plaintiff has not presented any facts that support this cause of action.

██ To prevail on a claim against a municipality pursuant to Section 1983, a plaintiff must satisfy the well-settled requirements of *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell* and its progeny, a Section 1983 plaintiff must show that a violation of his rights by an employee or agent of a municipality was the result of a "policy or custom" of the municipality. *Id.* at 694, 98 S.Ct. 2018. Conclusory allegations of municipal custom or policy are insufficient to satisfy this requirement. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir.1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993)); *Cerbelli v.*

*City of New York*, 600 F.Supp.2d 405, 411 (E.D.N.Y.2009) (holding same). Similarly, the United States Supreme Court has held that:

> [p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved.

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Here, the plaintiff primarily relies on two pieces of evidence to establish *Monell* liability. First, Nimkoff points out that, after he asked Orefice and Dollhausen to leave 12 Laura Lane, Dollhausen told him and Robin that, by regulation, he could not leave until he completed a report on the incident. According to Nimkoff, this is evidence that Nassau County has an unconstitutional policy of training officers to remain in a person's home to complete a domestic incident report, even if there is no exigency and the officers are asked to leave.

Second, Nimkoff cites to deposition testimony from Officer Nash that Nimkoff asserts demonstrates that Nassau County had an unconstitutional policy of handcuffing detainees while being held in their jail cell. Specifically, Nash testified:

> Q: And does anyone who's arrested get handcuffed to the piece of angle iron [in the jail cell]?
>
> A: I would say yes, unless there was an extenuating circumstance.
>
> . . .

Q: Do you recall anybody ever not being attached, being handcuffed to the piece of angle iron?

A. Not that I can recall. I'm not in there when prisoners are in there for their entire period.

(Nash Dep. at 46:22–25, 47:6–11.)

Taking all of the submissions in the best light for the plaintiff, the Court finds that this evidence is sufficient to create a triable issue of fact regarding whether Nassau County had policies and practices that led to the alleged violation of the plaintiff's Fourth Amendment right to privacy and Fourteenth Amendment right to be free from pre-conviction punishment. However, the plaintiff has provided no evidence beyond his own experience to demonstrate a Nassau County policy or practice that led to any of the other alleged violations of his constitutional rights.

Therefore, while the Court denies the defendants' motion for summary judgment dismissing the plaintiff's *Monell* claims with respect to the plaintiff's Fourth Amendment violation of privacy and Fourteenth Amendment pre-trial mistreatment claims, the Court grants the defendants' motion for summary judgment on the plaintiff's *Monell* claim in all other respects.

### I. As to the Plaintiff's Request for Punitive Damages

The plaintiff seeks punitive damages in connection with all of his causes of action against all of the defendants. The defendants seek to strike the plaintiff's request for punitive damages against Nassau County in connection with the plaintiff's Section 1983 claims.

In general, punitive Section 1983 damages against a municipality are barred by law. *See Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"). The plaintiff does not dispute this contention, but does note that punitive damages may be sought against individual defendants. The defendants, in turn, do not dispute the plaintiff's contention that such individual punitive damages are not generally barred by law.

Thus, pursuant to United States Supreme Court law, the Court strikes the plaintiff's request for punitive damages as against Nassau County in connection with the plaintiff's Section 1983 causes of action. The plaintiff's other requests for punitive damages remain pending.

### J. As to the Plaintiff's State Law Causes of Action for False Arrest, Assault, and Battery

Finally, the plaintiff asserts causes of action for wrongful arrest, assault, and battery pursuant to New York State law. However, while the complaint asserts that the "defendants" (compl., ¶¶ 65, 68) are liable for these causes of action, it also alleges that it was "Dollhausen and Orefice" who committed the alleged wrongful acts. (Compl., ¶¶ 64, 67.) Taking the plaintiff's ambiguous pleading in the best light for him, the Court interprets these causes of action to be asserted against Dollhausen and Orefice, as well as their employer, Nassau County, under a theory of *respondeat superior.* To the extent that the plaintiff seeks to assert these claims also against Nash, Molinelli, and Gallagher, the Court finds that the plaintiff has not asserted valid causes of action against these defendants, as there is no basis for their supervisory liability.

The defendants do not challenge these state law causes of action on their merits, but only assert that the Court should not exercise pendant jurisdiction over them if the Court dismisses all of the plaintiff's federal causes of action. As the Court has not dismissed all of the plaintiff's federal

causes of action, this argument is moot, and the plaintiff's state law causes of action will remain pending before the Court.

### K.   As to the John Doe Defendants

The plaintiff has named ten unknown Nassau County police officers as defendants, and sued them as John Doe, numbers 1–10.   The plaintiff having failed to identify any of these defendants at this late stage, the Court now *sua sponte* dismisses all of the plaintiff's causes of action against these unnamed defendants.

### III.   CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the defendants' motion for summary judgment dismissing the plaintiff's Section 1983 causes of action against defendants Dollhausen and Orefice for false arrest, excessive force, mistreatment during detention, and invasion of privacy is denied;  and it is further

**ORDERED** that the defendants' motion for summary judgment dismissing the plaintiff's *Monell* claim against the defendant Nassau County for violation of his Fourth Amendment right to privacy and Fourteenth Amendment right to be free from pre-trial punishment is denied;  and it is further

**ORDERED** that the defendants' motion for summary judgment dismissing the plaintiff's state law causes of action for false arrest, assault, and battery against defendants Dollhausen, Orefice, and Nassau County is denied;  and it is further

**ORDERED** that the defendants' motion for summary judgment dismissing all other causes of action asserted in the complaint, including all causes of action against defendants Nash, Molinelli, and Gallagher, is granted;  and it is further

**ORDERED** that the defendants' motion to strike the plaintiff's request for punitive damages against the defendant Nassau

County for Section 1983 violations is granted;  and it is further

**ORDERED** that the Clerk of the Court is respectfully directed to amend the caption in this case to read as follows:

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**

RONALD A. NIMKOFF, Plaintiff,

-against-

ERIC J. DOLLHAUSEN, DOMENICK P. OREFICE, and the COUNTY OF NASSAU, Defendants.

**SO ORDERED.**